USDC SCAN INDEX SHEET

















BJR   6/15/00    14:40

3:00-CV-01203   HOTELDOCS INC V. KROUSE

*1*

*CMP.*

| | |
|---|---|
| 1 | DAN ZEIDMAN, Esq. (State Bar No. 73276) |
| | JAMES T. BIGGS, Esq. (State Bar No. 175921) |
| 2 | LAW OFFICES OF DAN ZEIDMAN |
| | 260 E. Chase Avenue, Suite 201 |
| 3 | P.O. Box 1238 |
| | El Cajon, CA 92020 |
| 4 | (619) 440-3232 |

**FILED**

JAN 1 2 2000

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  S. Reed       DEPUTY

5    Attorneys for Plaintiffs
     HOTELDOCS, INC., a California corporation

6

7                    **UNITED STATES DISTRICT COURT**

8                    **SOUTHERN DISTRICT OF CALIFORNIA**

9

10

| | |
|---|---|
| HOTELDOCS, INC., a California corporation, | CASE NO. |
| | **'00 CV 01203  L (JAH)** |
| Plaintiff, | |
| v. | **COMPLAINT FOR BREACH OF CONTRACT; CIVIL CONSPIRACY; INTENTIONAL AND NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; INTENTIONAL MISREPRESENTATION (FRAUD); AND REQUEST FOR DECLARATORY RELIEF ON BREACH OF CONTRACT** |
| NEAL KROUSE, M.D., an individual; TRAVEL CARE MEDICAL SERVICES, INC., a business entity; RONNY J. HALPERIN, an individual; HOWARD GOLDSTEIN, an individual; PHYSICIANS GROUP, a business entity; LARRY VALLET, an individual; WILLIAM T. JOYNER, an individual; EDWARD SMOLAR, an individual; ARMAND KATZ, an individual; JOHN SCIARRINO, an individual; NILES L'ESTRANGE, an individual; CRAIG HERMAN, an individual; ROBERT CLINE, an individual; STEVEN SHAPIRO, an individual; HAROLD ALTCHULER; an individual; JAMES EVANS, an individual; HMR HOLDINGS, LLC, a business entity; and DOES 1 through 100, Inclusive, | |
| | **DEMAND FOR JURY TRIAL [F.R.C.P. 38(b); SD CA Rule 38.1]** |
| Defendants. | |

26    ///

27    ///

28    ///

1

Plaintiff HOTELDOCS, INC. hereby alleges as follows:

**PRELIMINARY ALLEGATIONS**

1. Plaintiff HOTELDOCS Inc. is, and at all times mentioned was, a corporation organized and existing under the laws of the State of California, and doing business in California.

2. Defendant TRAVEL CARE MEDICAL SERVICES, INC. is, and at all times mentioned was, a business organized and existing under the laws of the State of Florida.

3. Defendant HMR HOLDINGS, LLC, is, and at all times mentioned was, a business organized and existing under the laws of the State of Florida, and doing business in California.

4. Defendant PHYSICIANS GROUP, is, and at all times mentioned was, a business organized and existing under the laws of the State of Florida, and doing business in California.

5. Defendant NEAL KROUSE, M.D., is, and at all times herein mentioned was, a resident of Dade County, State of Florida.

6. Defendant RONNY J. HALPERIN, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

7. Defendant HOWARD GOLDSTEIN, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

8. Defendant LARRY VALLET, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

9. Defendant WILLIAM T. JOYNER, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

10. Defendant EDWARD SMOLAR, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

11. Defendant ARMAND KATZ, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

12. Defendant JOHN SCIARRINO, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

13. Defendant NILES L'ESTRANGE, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

14. Defendant CRAIG HERMAN, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

15. Defendant ROBERT CLINE, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

16. Defendant STEVEN SHAPIRO, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

17. Defendant HAROLD ALTCHULER, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

18. Defendant JAMES EVANS, is, and at all times herein mentioned was, a resident of the Dade County, State of Florida.

19. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, the above individual defendants were the agents and employees of defendants TRAVEL CARE MEDICAL SERVICES, HMR HOLDINGS, LLC, PHYSICIAN'S GROUP, and each other and/or remaining defendants, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of their codefendant.

20. The jurisdiction of this court over the subject matter of this action is predicated on 28 U.S.C. §1332. The amount of controversy exceeds $75,000.00, exclusive of interest and costs.

21. Venue is proper in that: 1) the contract between HOTELDOCS and Defendants KROUSE, et al. was to be performed in this district, and; 2) the claims for breach of contract, intentional interference and misrepresentation arose in this district.

3

1

**FIRST CLAIM FOR BREACH OF CONTRACT**

2

**(Against Neal Krouse, Howard Goldstein, Ronald Halperin)**

3      22. Plaintiff refers to and herein incorporates Paragraphs 1-

4  21, inclusive of the complaint.

5      23. On or about August 18, 1999, at San Diego, plaintiff

6  HOTELDOCS, INC. and the above-named Defendants KROUSE, GOLDSTEIN and

7  HALPERIN entered into a written agreement entitled the Confidential

8  Letter Of Intent (the "Agreement"), a copy of which is attached

9  hereto, **Exhibit "A"** and made a part hereof.

10     24. On or about August 18, 1999, and continuing thereafter,

11  through December 31, 1999, said Defendants KROUSE, GOLDSTEIN and

12  HALPERIN did wrongfully breach such Agreement by soliciting and

13  initiating discussions with various individuals not comprising the

14  Group Shareholders identified in said Agreement all in violation of

15  paragraphs 29, 30, as well as other provisions of said Agreement.

16     25.  Said Defendants KROUSE, GOLDSTEIN and HALPERIN failed to

17  preserve the integrity of HOTELDOCS, INC.'S, proprietary information

18  identified at paragraphs 29, 30 and instead shared, dispersed or

19  otherwise disclosed such proprietary information to various

20  individuals not comprising the Group Shareholders identified in said

21  Agreement.

22     26. Plaintiffs have performed all conditions, covenants, and

23  promises under said Agreement.

24     27. As a direct and proximate result of the wrongful acts as

25  herein described and allegedly Defendants KROUSE, GOLDSTEIN and

26  HALPERIN, plaintiff HOTELDOCS, INC., has been generally damaged in an

27  amount to be proven at trial.

28     28. As a direct and proximate result of the wrongful acts as

4

1  herein described and alleged, plaintiff HOTELDOCS, INC., has further
2  suffered Special Damages in an amount to be proven at trial.

### SECOND CLAIM FOR CIVIL CONSPIRACY

#### (Against All Defendants)

6      29.  Plaintiff refers to and herein incorporates Paragraphs 1-
7  28, inclusive of the Complaint.

8      30.   On, or about, August  18,  1999,  said  above-named
9  Defendants and each of them, knowingly and willfully conspired and
10 agreed among themselves and each other to damage the plaintiff
11 HOTELDOCS, INC., by depriving plaintiff of the benefits under said
12 Agreement by inducing Defendants and each of them to breach said
13 Agreement and to further conspire to inhibit, disrupt, constrain and
14 threaten Donald Kaplan, Gene Terry, and Edward Cooperman from
15 forming a separate joint venture with HOTELDOCS, INC.   Plaintiff
16 HOTELDOCS, INC., and/or otherwise maliciously conspired to damage
17 plaintiff HOTELDOCS, INC., prospective economic relationship with
18 Donald  Kaplan,  Gene  Terry,  and  Edward  Cooperman  as  alleged
19 hereinafter.

20     31.   Pursuant to such conspiracy, and furtherance thereof,
21 defendants, and each of them, during the period of August 18, 1999,
22 to April, 2000, and continuing at the present time, did wrongfully
23 solicit and actively engage in misappropriating and infringing
24 upon the proprietary information identified by said Agreement, which
25 would include but not be limited to, plaintiffs' trade secrets,
26 trademarks, copyrights, business methods of operation, and business
27 forms.

28     32.   As a proximate result of said Defendants' wrongful acts

1  pursuant to the conspiracy herein alleged, said Defendants did

2  wrongfully breach their contracts with the plaintiff HOTELDOCS,

3  INC., by sharing, dispersing, and otherwise disclosing proprietary

4  information in violation of paragraphs 29, and 30 of said Agreement.

5      33.  Plaintiff HOTELDOCS, INC., has performed all conditions,

6  covenants, and promises under said agreement.

7      34.  The last overt act perpetrated by said Defendants herein

8  consisted of conspiring to involve a veritable revolving door of

9  individual identified as members of the TRAVEL CARE MEDICAL

10  SERVICES, to whom sensitive and proprietary information was

11  wrongfully disclosed.

12      35.  As a direct and proximate result of the intentional and

13  egregious acts as herein described and alleged, plaintiff HOTELDOCS,

14  INC., has been generally damaged in an amount to be proven at trial.

15      36.  As a direct and proximate result of the wrongful acts as

16  herein described and alleged, plaintiff HOTELDOCS, INC., has further

17  suffered Special Damages in an amount to be proven at trial.

18      37.  In doing the things herein alleged, defendants acted with

19  malice, oppression, and/or fraud as defined under California Civil

20  Code §3294 (C) and were and are therefore guilty of oppression in

21  conscious disregard of plaintiffs' rights, thereby warranting an

22  assessment of punitive damages in an amount appropriate to punish

23  defendants and deter others from engaging in similar misconduct.

24  / / /

25

26  / / /

27

28  / / /

6

**THIRD CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC**

**RELATIONSHIP**

**(Against Neal Krouse, Howard Goldstein, Ronald Halperin)**

38. Plaintiff refers to and herein incorporates Paragraphs 1 - 37, inclusive, of the Complaint.

39. Between approximately 1997, and the present time, plaintiff HOTELDOCS, INC., has involved in a noncontractual economic relationship with Donald Kaplan, Gene Terry, and Edward Cooperman, in a concerted develop HOTELDOCS, INC.'S, business of providing medical services to individuals staying in hotels. Said noncontractual economic relationship aimed at and made great efforts toward developing strategic marketing plans, identifying and negotiating with potential marketing partners, and providing ongoing consulting advice and assistance.

40. Defendants KROUSE, GOLDSTEIN and HALPERIN and each of them knew of the above described noncontractual economic relationships existing between plaintiff HOTELDOCS, INC., and Donald Kaplan, Gene Terry, Edward Cooperman, and/or others because such noncontractual economic relationship aimed at and made great efforts toward developing strategic marketing plans, identifying and negotiating with potential marketing partners, and providing ongoing consulting advice and assistance all to inure to the benefit of Defendants.

41. On or about August 18, 1999, and continuing thereafter, Defendants KROUSE, GOLDSTEIN and HALPERIN and each of them have refused to cooperate in reaching an Agreement to go forward with a joint venture which was to include HOTELDOCS, INC., and Donald Kaplan, Gene Terry, Edward Cooperman and the remaining Defendants. HOTELDOCS, INC., and Donald Kaplan, Gene Terry, Edward Cooperman

7

1   were prevented over and over from consummating a joint venture with
2   Defendants KROUSE, GOLDSTEIN and HALPERIN due to their perpetual
3   non-cooperation and footdragging including, but not limited to,
4   failing to show up for scheduled meetings between HOTELDOCS, INC.,
5   Donald Kaplan, Gene Terry, Edward Cooperman and others, failing to
6   provide complete records of business investors, including those
7   business investors comprising the TRAVEL CARE MEDICAL GROUP and/or
8   the PHYSICIANS GROUP, making inaccurate representations to potential
9   clients and investors, making improper and therefore embarrassing
10  arrangements with strategic business associates, failure to provide
11  timely payment for services of joint venture members Donald Kaplan,
12  Gene Terry, Edward Cooperman and others, passing checks with
13  insufficient funds, and providing inaccurate accounting to joint
14  venture members Donald Kaplan, Gene Terry, Edward Cooperman and/or
15  others.

16       42.   While said Defendants KROUSE, GOLDSTEIN and HALPERIN
17  refused to cooperate and meaningfully participate in forming of a
18  joint venture with HOTELDOCS, INC., said Defendants KROUSE and
19  HALPERIN and each of them have inhibited, disrupted, constrained and
20  threatened Donald Kaplan, Gene Terry, and Edward Cooperman from
21  forming a separate joint venture with HOTELDOCS, INC.   Plaintiff
22  HOTELDOCS, INC., believes and thereon alleges that Defendants took
23  the position that if they could not be part of a joint venture with
24  HOTELDOCS, INC., they were going to do and in fact did everything in
25  their power to prevent HOTELDOCS, INC., from entering a separate
26  joint venture with Donald Kaplan, Gene Terry, Edward Cooperman, and
27  anyone else.   Said Defendants and each of them have intentionally
28  interfered with the prospective economic relationship that plaintiff

1 | HOTELDOCS, INC., enjoyed with Donald Kaplan, Gene Terry, and Edward
2 | Cooperman.

3 | 43. On or about August 18, 1999, and continuing thereafter,
4 | Donald Kaplan, Gene Terry, and Edward Cooperman have retreated from
5 | forming any further agreements and/or joint ventures with HOTELDOCS
6 | and have effectively severed and/or broken off their business
7 | relationship with plaintiff HOTELDOCS.

8 | 44. As a proximate result of said Defendant's KROUSE,
9 | GOLDSTEIN and HALPERIN'S conduct as outlined above and said tortious
10 | interference with plaintiff HOTELDOCS' prospective business
11 | relationship, INC., has suffered General Damages in an amount to be
12 | proven at trial.

13 | 45. As a direct and proximate result of the wrongful acts as
14 | herein described and alleged, plaintiff HOTELDOCS, INC., has further
15 | suffered Special Damages in an amount to be proven at trial.

16 | 46. In doing the things herein alleged, Defendants KROUSE,
17 | GOLDSTEIN and HALPERIN acted with malice, oppression, and /or fraud
18 | as defined under California Civil Code §3294 (C) and were and are
19 | therefore guilty of oppression in conscious disregard of plaintiffs'
20 | rights, thereby warranting an assessment of punitive damages in an
21 | amount appropriate to punish defendants and deter others from
22 | engaging in similar misconduct.

23 |
24 | / / /
25 |
26 | / / /
27 |
28 | / / /

9

**FOURTH CLAIM FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC**

**RELATIONSHIP**

**(Against Neal Krouse, Howard Goldstein, Ronald Halperin)**

47. Plaintiff refers to and herein incorporates Paragraphs 1 - 46, inclusive, of the Complaint.

48. Between approximately 1997, and the present time, plaintiff HOTELDOCS, INC., was involved in a noncontractual economic relationship with Donald Kaplan, Gene Terry, and Edward Cooperman, in a concerted develop HOTELDOCS, INC.'S, business of providing medical services to individuals staying in hotels. Said noncontractual economic relationship aimed at and made great efforts toward developing strategic marketing plans, identifying and negotiating with potential marketing partners, and providing ongoing consulting advice and assistance.

49. On or about August 18, 1999, and continuing thereafter, Defendants KROUSE, GOLDSTEIN and HALPERIN and each of them have refused to cooperate in reaching an Agreement to go forward with a joint venture which was to include HOTELDOCS, INC., and Donald Kaplan, Gene Terry, Edward Cooperman and said Defendants. HOTELDOCS, INC., and Donald Kaplan, Gene Terry, Edward Cooperman were prevented over and over from consummating a joint venture with Defendants KROUSE, GOLDSTEIN and HALPERIN due to their perpetual non-cooperation and footdragging including, but not limited to, failing to show up for scheduled meetings between HOTELDOCS, INC., Donald Kaplan, Gene Terry, Edward Cooperman and others, failing to provide complete records of his business investors, as well as those business investors comprising TRAVEL CARE MEDICAL SERVICES and PHYSICIANS GROUP, making inaccurate representations to potential

10

1   clients and investors, making improper and therefore embarrassing

2   arrangements with strategic business associates, failure to provide

3   timely payment for services of other joint venture members Donald

4   Kaplan, Gene Terry, Edward Cooperman and others, passing checks with

5   insufficient funds, and providing inaccurate accounting to joint

6   venture members Donald Kaplan, Gene Terry, Edward Cooperman, and/or

7   others.

8       50.   While said Defendants KROUSE, GOLDSTEIN and HALPERIN

9   refused to cooperate and meaningfully participate in forming of a

10  joint venture with HOTELDOCS, INC., said Defendants and each of them

11  have inhibited, disrupted, constrained and threatened Donald Kaplan,

12  Gene Terry, and Edward Cooperman all in attempt to prevent said

13  individuals from forming a separate joint venture agreement with

14  HOTELDOCS.

15      51.   Plaintiff HOTELDOCS, INC., believes and thereon alleges

16  that Defendants KROUSE, GOLDSTEIN and HALPERIN took the position

17  that if they could not be part of a joint venture with HOTELDOCS,

18  INC., they were going to do prevent HOTELDOCS, INC., from entering

19  a separate joint venture with Donald Kaplan, Gene Terry, and Edward

20  Cooperman.   Said Defendants KROUSE, GOLDSTEIN and HALPERIN and each

21  of them knew, or in the exercise of ordinary care should have known

22  that, their interference, obstruction and threats would interfere

23  with the prospective economic relationship that plaintiff HOTELDOCS,

24  INC., enjoyed with Donald Kaplan, Gene Terry, and Edward Cooperman.

25      52.   Beginning on or about August 18, 1999, and continuing

26  thereafter, Donald Kaplan, Gene Terry, and Edward Cooperman have

27  retreated from their interest in a joint venture and have

28  subsequently retreated from, severed and/or otherwise broken off

11

1 | their business relationship with plaintiff HOTELDOCS, INC.

2 |     53. As a proximate result of said Defendant's KROUSE,

3 | GOLDSTEIN and HALPERIN'S tortious interference as described above,

4 | plaintiff HOTELDOCS, has suffered General Damages in an amount to be

5 | proven at trial.

6 |     54. As a direct and proximate result of the wrongful acts as

7 | herein described and alleged, plaintiff HOTELDOCS, has further

8 | suffered Special Damages in an amount to be proven at trial.

9 |

10 | **FIFTH CLAIM FOR INTENTIONAL MISREPRESENTATION (FRAUD)**

11 | **(Against Neal Krouse)**

12 |     55. Plaintiff refers to and herein incorporates Paragraphs 1 -

13 | 54, inclusive, of the Complaint.

14 |     56. Prior to July 1997 and before the plaintiff HOTELDOCS

15 | entered into the Letter Of Intent Agreement with KROUSE (attached

16 | and referred to herein as **Exhibit "A"**), Defendant KROUSE made

17 | numerous representations to HOTELDOCS that KROUSE had a prior

18 | agreement and/or arrangement with one Richard M. Portas, the Aon

19 | Services Group Vice President at Aon Insurance Company.

20 | Defendant KROUSE represented to HOTELDOCS that his agreement with

21 | Mr. Portas would result in Aon Insurance Company sending and/or

22 | otherwise referring to HOTELDOCS an enormous volume of Aon Insurance

23 | Company insureds and would further result in an exponential increase

24 | in HOTELDOCS' business.

25 |     57. The representations by KROUSE that KROUSE had a prior

26 | agreement and/or arrangement with Richard M. Portas were false.

27 |     58. At the time that KROUSE made said representations

28 | concerning his agreement with Richard Portas and Aon Insurance and

1  the capacity to increase the business of HOTELDOCS, Defendant KROUSE

2  knew the representations were false.

3     59.   The   true   facts   were   that   Defendant   KROUSE   had   no

4  relationship, agreement, and/or commitment from Mr. Portas and Aon

5  Insurance Company, or any other insurance executive, to refer to

6  HOTELDOCS a enormous volume of insureds who would make exclusive use

7  of HOTELDOCS' medical referral services once KROUSE and HOTELDOCS

8  entered an agreement.

9     60.   The   true   facts   were   that   KROUSE   intentionally

10  misrepresented the extent of his relationship with Mr. Portas and

11  Aon Insurance Company in order to induce HOTELDOCS to enter a joint

12  venture agreement with KROUSE.

13     61.   The true facts were also that KROUSE misrepresented the

14  extent   of   his   relationship   with   HOTELDOCS   to   Mr.   Portas,

15  representing to Mr. Portas that KROUSE had a large data bank of

16  doctors who were licensed, qualified, willing, and able to perform

17  housecalls at the insureds' hotel rooms when and if Mr. Portas

18  agreed to refer his insureds exclusively to HOTELDOCS for in-room

19  medical service.  The true facts were that at the time he made said

20  representations to Mr. Portas, KROUSE did not have any access

21  HOTELDOCS' large data base of doctors who were licensed, qualified,

22  willing, and able to perform in-room medical housecalls at the

23  traveling insureds' hotel rooms.

24     62.   Plaintiff HOTELDOCS, at the time these representations

25  were made by Defendant KROUSE and at the time HOTELDOCS entered into

26  the Letter Of Intent agreement and took the further actions herein

27  alleged,   was   ignorant   of   the   falsity   of   Defendant   KROUSE'S

28  representations and believed them to be true.

13

63.   In reliance on the above-stated false representations, HOTELDOCS was induced to and did agree to enter into a joint venture with KROUSE and to further, avoid, stall and otherwise to put on hold any further joint venture opportunities in honor of HOTELDOCS' joint venture with KROUSE.   HOTELDOCS reasonably relied upon the assurances and representations of KROUSE as stated above in deciding to enter into the joint venture as evidenced by the Letter Of Intent (Attached as **Exhibit "A"**).

64.   Had HOTELDOCS known the actual facts and the defendant KROUSE'S intention to misrepresent his relationship with and commitment from Mr. Portas, HOTELDOCS would not have taken such action.   HOTELDOCS' reliance upon the Defendant KROUSE'S representations were justified in that HOTELDOCS reasonably relied upon KROUSE'S representations that he had the connections to substantially grow HOTELDOCS' business.

65. As a proximate result of said Defendant's KROUSE'S conduct plaintiff HOTELDOCS, INC., has suffered General Damages in an amount to be proven at trial.

66. As a direct and proximate result of the wrongful acts as herein described and alleged, plaintiff HOTELDOCS, INC., has further suffered Special Damages in an amount to be proven at trial.

67. In doing the things herein alleged, Defendant KROUSE acted with malice, oppression, and /or fraud as defined under California Civil Code §3294 (C) and were and are therefore guilty of oppression in conscious disregard of plaintiffs' rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

/ / /

14

1

## SIXTH CLAIM FOR DECLARATORY RELIEF

2

**(Against Neal Krouse, Howard Goldstein, Ronald Halperin)**

3      68. Plaintiff refers to and herein incorporates Paragraphs 1 –

4  67, inclusive, of the Complaint.

5      69. On or about August 18, 1999, and continuing thereafter,

6  through December 31, 1999, said Defendants KROUSE, GOLDSTEIN and

7  HALPERIN did wrongfully breach the Letter Of Intent agreement

8  (attached as **Exhibit "A"**) by soliciting and initiating discussions

9  with various individuals not comprising the Group Shareholders

10  identified in said Agreement all in violation of paragraphs 29, 30,

11  as well as other provisions of said Agreement.

12      70.  Said Defendants further failed to preserve the integrity

13  of HOTELDOCS, INC.'S, proprietary information identified at

14  paragraphs 29, 30 and instead shared, dispersed or otherwise

15  disclosed such proprietary information with a revolving door of

16  constantly changing individuals who were, one moment identified by

17  Defendants as part of the Group Shareholders, and the next moment

18  withdrawn as members of the Shareholders Group identified in said

19  Agreement.

20      71. Plaintiffs have performed all conditions, covenants, and

21  promises under said Agreement, however, said Defendants have

22  continuously failed and refused to provide a definitive

23  identification of the members of the Shareholders Group, the

24  PHYSICIANS GROUP, and/or the particular members of whom would be

25  joining and participating in the joint venture with HOTELDOCS, INC.

26      72.  An actual controversy has arisen and now exists between

27  plaintiff HOTELDOCS, INC., and said Defendants, in that HOTELDOCS,

28  INC., asserts it has a right to a final and definitive

15

identification all members of the Shareholders Group, PHYSICIANS GROUP, or all persons or entities with whom HOTELDOCS, INC., is expected to join in a joint venture identified under the Agreement.

73. Plaintiff HOTELDOCS, INC., desires a judicial determination of its rights and duties, and a declaration as to who the final members of TRAVEL CARE MEDICAL, and/or PHYSICIANS GROUP, and/or otherwise all those persons or entities with whom the Agreement envisions, applys to, and otherwise pertains.

**WHEREFORE,** plaintiff HOTELDOCS, INC. seeks judgment against the above-named Defendants as follows:

**On the FIRST CAUSE OF ACTION (BREACH CONTRACT):**

1.   For General Damages in an amount to be proven at trial.
2.   For Special Damages in an amount to be proven at trial.
3.   For reasonable attorney's fees.
4.   For plaintiffs' costs incurred in pursuing this action.
5.   For any other and further relief as the court may deem proper.

**On the SECOND CAUSE OF ACTION (CIVIL CONSPIRACY):**

1.   For General Damages in an amount to be proven at trial.
2.   For Special Damages in an amount to be proven at trial.
3.   For punitive damages in an amount to be proven at trial.
4.   For reasonable attorney's fees.
5.   For plaintiffs' costs incurred in pursuing this action.
6.   For any other and further relief as the court may deem proper.

/ / /

**On the THIRD CAUSE OF ACTION (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE):**

1.  For General Damages in an amount to be proven at trial.

2.  For Special Damages in an amount to be proven at trial.

3.  For punitive damages in an amount to be proven at trial.

4.  For reasonable attorney's fees.

5.  For plaintiffs' costs incurred in pursuing this action.

6.  For any other and further relief as the court may deem proper.

**On the FOURTH CAUSE OF ACTION (NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE):**

1.  For General Damages in an amount to be proven at trial.

2.  For Special Damages in an amount to be proven at trial.

3.  For reasonable attorney's fees.

4.  For plaintiffs' costs incurred in pursuing this action.

5.  For any other and further relief as the court may deem proper.

**On the FIFTH CAUSE OF ACTION (FRAUD):**

1.  For General Damages in an amount to be proven at trial.

2.  For Special Damages in an amount to be proven at trial.

3.  For reasonable attorney's fees.

4.  For punitive damages in an amount to be proven at trial.

5.  For plaintiffs' costs incurred in pursuing this action.

6.  For any other and further relief as the court may deem proper.

/ / /

1    **On the SIXTH CAUSE OF ACTION (DECLARATORY RELIEF):**

2      1.   For a declaration of its rights and duties, and a

3           declaration as to who the final members of the

4           Shareholders Group, and/or PHYSICIANS GROUP, and/or all

5           those persons or entities with whom HOTELDOCS, INC., will

6           be entering the joint venture with as envisioned under

7           the Agreement.

8      2.   For General and Special Damages in an amount to be proven

9           at trial.

10     3.   For plaintiffs' costs incurred in pursuing this action.

11     4.   For any other and further relief as the court may deem

12          proper.

13

14

15   DATED:  6·14.00                LAW OFFICES OF DAN ZEIDMAN

16

17                            By:
                                   DAN ZEIDMAN
18                                 JAMES T. BIGGS
                                   Attorneys for Plaintiff
19                                 HOTELDOCS, INC., a California
                                   Corporation
20

21

22

23

24                     **DEMAND FOR JURY TRIAL**

25       Plaintiff HOTELDOCS, INC. hereby demands a jury trial as

26   provided by Rule 38(a) of the Federal Rules of Civil Procedure.

27

28

                              18

## Confidential Letter of Intent

The following is an outline of the agreement ("the Agreement") by and between shareholders of HotelDocs, Inc. ("HotelDocs") and Group Shareholders.

1.  The shareholders of HotelDocs, Inc., agree to transfer 15% of said corporation, in trust, to Group Shareholders. Said shares of stock shall become vested in Group Shareholders upon the production of financing for HotelDocs in an amount not less than $500,000.00. In the event that financing is not produced within six months of the signing of an agreement, then, in that event, all transferred stock shall be returned to the HotelDocs, Inc. shareholders and this Agreement shall terminate.

2.  In addition to the 15% share mentioned above, Group Shareholders will receive 5% interest in HotelDocs for the production of each $500,000.00, but not to exceed $1,000,000.00 or 10% (i.e. the production of $1,000,000.00 in financing would give Group Shareholders a vested interest in HotelDocs of 25%). All financing is subject to reasonable terms and approval by the existing shareholders of HotelDocs.

3.  Group Shareholders agree to ~~increase the number of cases by 7,000~~ *double the number of cases* handled by HotelDocs, within one year, or ~~in that event~~ *if not* the initial 15% of stock of HotelDocs share be returned to shareholders of HotelDocs and this Agreement shall terminate, (except as otherwise specified in the agreements.)

    *during the 12 month period prior to the effective date of the final agreement between Hotel Docs and Group Shareholders*

4.  The original discussion was an "all or nothing" for each additional 7,000 new cases. You raised the issue that this was not "fair" because if you provided half the number of cases, you should receive some benefit. Notwithstanding the "all or nothing" prior agreement, we are willing to reevaluate this issue and provide ownership based on part of the 7,000 additional new cases. However, it cannot be pro rata because of the "fixed costs" of maintaining an operation to handle additional cases.

1

# EXHIBIT A

The ownership ratio chosen by Group Shareholders is based on a "Rule of 78" Formula as shown below:

| Level of Increase | % | % | Cumulative Value |
|---|---|---|---|
| 1st 1,000 cases (1/28th) | 3.571 | .21 | .21 |
| 2nd 1,000 cases (2/28th) | 7.143 | .42 | .63 |
| 3rd 1,000 cases (3/28th) | 10.714 | .64 | 1.27 |
| 4th 1,000 cases (4/28th) | 14.286 | .86 | 2.13 |
| 5th 1,000 cases (5/28th) | 17.857 | 1.07 | 3.20 |
| 6th 1,000 cases (6/28th) | 21.429 | 1.30 | 4.50 |
| 7th 1,000 cases (7/28th) | 25.000 | 1.50 | 6.00 |
| TOTAL          (28/28) | 100.000 | 6.00 | |

5.   This Agreement has a five year term if not otherwise terminated by other provisions.

6.   Group Shareholders shall be limited to 50% ownership in HotelDocs, such ownership to be acquired during the five (5) year term of this agreement.

7.   All parties represent and warrant that to the best of their knowledge, there are no adverse conditions, lawsuits, investigations or other matters of any kind whatsoever that would be viewed negatively by the established business community in the event of an IPO.  If such adverse information should be discovered, the only consequences shall be that the affected party agrees to take all steps necessary to disassociate from each other, provided, however that such party's equity interest shall not be impaired.

8.   HotelDocs and Group Shareholders shall indemnify the other for any claims brought against either arising out of the business of the other occurring either prior to or subsequent to the effective date of the Agreement.  All decisions regarding medical protocol and relationships with physicians shall be referred to a medical advisory committee appointed by the Board of Directors.

9.   Hotel Docs shall take all necessary steps to reasonably assume its compliance with regulations and laws governing the practice of medicine in the jurisdictions where it conducts business.

2

11. Group Shareholders shall have the right to inspect and review all aspects of HotelDocs' operation, except for the physicians lists which are proprietary until financing is arranged.

12. All Shareholders of HotelDocs and Group Shareholders shall enter into a shareholders agreement regarding restrictions on transfers of interest and confidentiality, non-competition and non-disclosure issues.

13. HotelDocs agrees to place any two Group Shareholder participants on its Board of Directors and further agree to use its best efforts to assist Group Shareholders in their marketing efforts.

14. It is agreed that all shareholders shall be diluted equally upon the production of financing. Said dilution shall not exceed standard business practices.

15. This Letter of Intent shall be executed within five (5) days and final contracts executed within one (1) month.

16. The Letter of Intent is intended as a statement of our mutual intent to engage in the transactions described. It is non-binding except with respect to the items specifically mentioned and is intended to be followed by the negotiation and execution of a definitive agreements which will be binding according to its terms and subject to the preparation of the final definitive documentation.

17. We still propose that Group Shareholders would obtain an additional ten percent (10%) ownership ( as part of their 50% ) when $1 million funding is arranged. Obviously, the cost of capital has to be "reasonable" as to both rate, term and ownership (with provisions that HotelDocs will not lose "control"). These issues need to be resolved in a forthcoming meeting.

We are flexible on these issues, as well we hope you are.

18. HotelDocs will supply documentation that sets forth the operations of HotelDocs including income and expenses, customer lists, and any other information required to identify and delineate the HotelDocs business. The physician lists, being propriety, will not be shared until adequate financing is arranged.

All information will be under a strict non-compete, non-disclosure agreement to protect HotelDocs from any of the principals going into competition with HotelDocs. This agreement will be for at least five (5) years with assignment of all contracts to HotelDocs

3

19. Principal Officers of HotelDocs (Ian Becker, Kevin Brenden and Don Kaplan) will be given severance contracts of employment for five (5) years, and compensation and benefits equal to compensation and benefits earned from HotelDocs for the year prior to the termination, but in no case less than a minimum compensation of $X and benefits. *(one million)*

20. In the event that Group Shareholders business does not generate revenues from new cases totaling in the aggregate, $21 million additional (Ed Cooperman indicated doubling the business, by the end of 2,000), HotelDocs, may at its sole discretion, terminate the Agreement. This will be accomplished via pledged securities and restricted stocks to assure the status quo is restored.

Group Shareholders parties will be bound to non-compete and non-disclosure agreements for five (5) years following such an event.

21. All parties agree to make best efforts to promote the business of HotelDocs

22. HotelDocs shall not be required to contribute or incur any amounts for marketing or advertising expenses for new cases. This was re-discussed with Don Kaplan during our telephone conversation on June 15, 1999. Funds raised for financing will be used to expand the operations.

23. Directors and Officers:

    (i)    Directors

| | |
|---|---|
| HotelDocs | 3 |
| Group Shareholders | 2 |
| Total Board | 5 |

    (ii)    Officers

| | |
|---|---|
| CEO | Ian Becker |
| COO | Don Kaplan |
| CFO | Kevin Brenden |
| Exec VP | Kevin Brenden |

4

The compensation ratio for the three principal officers will be as follows:

| | |
|---|---|
| Ian Becker | 100 % |
| Kevin Brenden | 75% |
| Don Kaplan | 60% to 125% |

For example, Don Kaplan would have a base of $60,000 plus $X per case. If 8,000 cases were added at $5 per case, he would have $100,000. If 16,000 cases were added, he would receive $125,000 (cap).

Ian Becker's initial base would be $100,000. While the ratios would be in effect for five (5) years, the board can increase compensation 300% and reduce compensation 20% if results warrant same during initial five (5) years.

(iii)   The Directors shall appoint such other officers as they deem appropriate;

24.   Each entity shall have the right to inspect and review all aspects of each other's operations, subject to the non-compete and non-disclosure agreement. However, the physicians lists, being proprietary, are specifically excluded.

25.   All shareholders, officers and principals shall enter into a shareholders agreement regarding restrictions on transfers of interest and confidentiality, non-competition and non-disclosure issues.

26.   Non-circumvention and non-compete agreements are integral factors in this agreement.

27.   Dr. Krouse can be on the Board of HotelDocs but will have no management responsibilities.

28.   From the date of execution of this letter until closing, each party shall give each other and its shareholders, its counsel, accountants, and other representatives and agents reasonable access to the premises of each or the necessary documents will be delivered to the offices of each advisors where each representatives will have access to such information. Each shall attempt to conduct its due diligence during normal business operations of each. Each shall promptly notify the other in writing of any material adverse change in the financial condition of each or any events or conditions which

5

may have a material adverse effect on the value of assets or stock of each.

29.   In consideration of each party incurring the cost and expenses in undertaken the evaluation described in paragraph 28, from the signing of this letter through December 31, 1999, (the "Exclusive Period"), each party and its respective affiliates, officers, directors, employees, representatives or agents, (including, without limitation, investment bankers, attorneys and accountants), will not directly or indirectly solicit or initiate any discussions or negotiations, with or, subject to any fiduciary obligations under applicable law as advised by counsel, encourage or respond to any inquiries or proposals by, or participate in any negotiations with or provide any information to or otherwise cooperate in any other way with, any corporation, partnership, person or other entity, other than each other, or its representatives, employees and agents, concerning any business relationship re hotel/medical services or sale of all or a substantial portion of the assets of each party, or of any shares of capital stock of each other or any merger, consolidation, liquidation, dissolution or similar transaction involving Group Shareholders (all such transactions being referred to herein as a "Proposed Acquisition Transaction"). However, nothing contained herein is meant to limit any HotelDocs operation in the ordinary course of business.

30.   Each party hereto shall keep all proprietary information obtained by either party from another party hereto confidential and shall disclose such information only to their respective employees and representatives who have a "need to know" of such information in connection with the proposed transaction. Neither party shall disclose to any person the terms or the existence of this letter or the fact that the parties are conducting these negotiations, except with the prior approval of the other parties. Notwithstanding the preceding sentence, the parties may make such disclosure as required by law upon written recommendation of legal counsel (a copy of which recommendation and the proposed disclosure would be provided to the other party). Such disclosure may only be made to such persons or entities having a need to know of same in order to facilitate consummation of the proposed transaction.

31.   The purpose of this letter is to summarize the understandings reached as a result of preliminary negotiations regarding the proposed transaction. This letter does not set forth binding obligations of HotelDocs, or Group Shareholders or their respective shareholders; any such obligations are subject to executions and delivery of a definitive agreement, except that paragraphs 29 and 30 are intended to be, and shall be, legally binding agreements between the parties regardless of whether the proposed transaction is consummated. Except as set forth in paragraphs 29 and 30,

6

no party hereto shall be under any legal obligation with respect to the proposed transaction and no offer or binding commitment of any nature whatsoever shall be implied, unless and until a definitive agreement has been executed and delivered by all parties.

32.   Nothing in this letter is intended or shall be construed or interpreted to give any person or entity other than the parties hereto any legal or equitable right, remedy or claim under or in respect of this letter or any provision herein.

33.   All matters herein are governed by the laws of the State of California. Venue is to lie in courts in San Diego County, CA.

34.   The obligation of HotelDocs, and Group Shareholders to close the transaction will be subject to the customary conditions in a transaction of this nature including, but not limited to, the following:

  ▸   Each entity shall have completed its financial, operational and legal due diligence review of the other and shall be satisfied in its sole discretion with such review.

  ▸   The parties shall have entered into a definitive agreement containing terms, conditions, representation, warranties, agreements and indemnities appropriate to a transaction of this type.

  ▸   There shall have been no material adverse change in the assets, liabilities, financial condition or prospects of either party prior to closing.

  ▸   The Boards of Directors of HotelDocs and Group Shareholders and all other parties required to consent to or approve the transaction (including regulatory, shareholder, lender and fiduciary approvals and consents) contemplated by the definitive agreement shall have taken all actions necessary to approve or consent to the transaction.

  ▸   From the date of execution hereof until the execution of a definitive agreement and consummation of the transaction described herein, each party will conduct business only in the necessary course consistent with past practices, shall not sell or otherwise transfer any ownership rights, and will maintain its books and records in accordance with past practices.

7

**AGREED and ACKNOWLEDGED by the parties.**

**HotelDocs**                                    **Group Shareholders**

By:_____     By:_____   %
    Ian Becker, President                 Dr. Neal Krouse
    Date:_____                      Date:_____


_____         _____   %
Kevin Brendan, Officer            Edwin Cooperman
Date:_____                  Date: Aug 7, 1999


_____         _____   %
Ian Becker, Individual            Eugene Terry
Date:_____                  Date: 7 JUL 7 1999


                                  _____   %
                                  Howard Goldstein
                                  Date:_____


                                  _____   %
                                  Ronny J. Halperin
                                  Date:_____


                                  _____   %
                                  Donald M. Kaplan
                                  Date: Aug 7, 1999

8

AGREED and ACKNOWLEDGED by the parties.

**HotelDocs**                                          **Group Shareholders**

By: _____                By: _____     ½

Ian Becker, President                                  Dr. Neal Krouse
Date: _____                                Date: _____

_____                     _____     ½

Kevin Brenden, Officer                               Edwin Cooperman
Date: _____                                Date: Aug 7, 1999

_____                     _____     ½

Ian Becker, Individual                                Eugene Kory
Date: _____                                Date: _____ 7, 1999

                                                              _____     ½

                                                              Howard Goldstein
                                                              Date: 8-11-99


                                                              _____     ½

                                                              Ronny J. Halperin
                                                              Date: _____

                                                              _____     ½

                                                              Donald M. Kaplan
                                                              Date: Aug 7, 1999

1

AGREED and ACKNOWLEDGED by the parties.

**HotelDocs**

**Group Shareholders**

By: _____

By: _____  %: ___

Ian Becker, President
Date: _____

Dr. Neal Krouse
Date: _____

_____

_____  %: ___

Kevin Brenden, Officer
Date: _____

Edwin Copperman
Date: Aug 7, 1999

_____

_____  %: ___

Ian Becker, Individual
Date: _____

Eugene Gay
Date: 7/7/99

_____  %: ___

Howard Goldstein
Date: _____

_____  %: ___

Ronay J. Halpern
Date: _____

_____  %: ___

Donald M. Kaplan
Date: Aug 7, 1999

JS44
(Rev 07/89)

# CIVIL COVER SHEET

**FILED**

JUN 12 2000

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| HOTELDOCS, INC. | NEAL KROUSE, ET AL., |

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  San Diego  (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) |
|---|---|
| | NOTE. IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)  (619) 440-3232 | ATTORNEYS (IF KNOWN) |
|---|---|
| Dan Zeidman, Esq.<br>James T. Biggs, Esq.<br>260 E. Chase, No. 201<br>El Cajon, CA 92020 | '00 CV 01203 L (JAH) |

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX (For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☒4 | ☐4 |
| Citizen of Another State | ☐2 | ☒2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION** (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).   28 USC Sec. 1332 OC

Breach of Contract; Negligent Interference with Economic Advantage

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgments | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | LABOR | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ | Check YES only if demanded in complaint: JURY DEMAND: ☒ YES ☐ NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See Instructions): | JUDGE | Docket Number |
|---|---|---|

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| | 6-14-00 |

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)